### WILL BURRIS V. THE STATE.

*No. 1127. Decided April 28th, 1897.*

**New Trial—Separation and Misconduct of Jury.**

On a trial for robbery, where it appeared by uncontroverted affidavits, attached to the motion for new trial, that pending the trial and before the argument was concluded, the jury in the case went into the county jail, two of the members remaining in the jail office outside, and the other ten going into the inside and among the cells and talking to the prisoners and to the defendant, who was in jail, about defendant's case and the case of his codefendant. That the outside door was locked, and they were locked in when they were talking to the prisoners, and were entirely separated, by the jail walls and locked door, from their two fellows, who were outside of the jail in the office. That this condition of affairs lasted about half an hour. Held: The separation of the jury was illegal, and their misconduct reprehensible and of such character as requires that the judgment of conviction be not permitted to stand—and a new trial should have been granted.

APPEAL from the District Court of McLennan. Tried below before Hon. S. R. SCOTT.

Appeal from a conviction for robbery; penalty, five years' confinement in the penitentiary.

This is the second appeal in this case; see, Burris v. State, 36 Tex. Crim. Rep., 13, and the companion case, Moore v. State, 36 Tex. Crim. Rep., 88. In view of the disposition made of this appeal, it is unnecessary to make a statement of the evidence.

*Cunningham & Cunningham*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of robbery, and given five years in the penitentiary; hence this appeal. Appended to his motion for a new trial is the affidavit of P. K. Hutton, who states: "That he was in the county jail in Waco on the morning of November 18, 1896, and ten of the jurors who were trying Will Burris came into the jail and scattered all around the jail cells, talking to the prisoners all through the jail; and he heard members of the jury discussing various phases of Burris' case. That one Deyerly, a juror, asked one C. A. Smith how long Burris had been in jail, and one of the jurors asked what had become of Burris' partner, Moore; and some one outside of the cells, in the space known as the 'run-around,' where the jurors were, spoke up and said Moore had already gotten ten years and was in the penitentiary; and he denied that Moore had gone to the pen, but informed said juror asking the question that Moore had been sentenced for ten years for the robbery, but had not yet gone. And the party who said Moore was in the pen said he thought Moore had been brought through Waco, on his way to the pen. There were only ten of the jury inside of the jail, and the outside door was locked. I don't know where the others were, but some of them told us prisoners that the others were outside of the jail, in the office." The defendant himself sets up in his motion for a new trial, and swears to the same: "That he was in the jail when the ten jurors went in there. That this occurred before counsel had concluded the argument, and before the jury had received the charge, and that the two remaining jurors were in the jail office, and that they remained so separated for about thirty minutes. That, while the ten jurors were in the jail, they scattered around the cells, and went through the jail, and talked to the prisoners and to defendant, who was in the jail. That the jurors talked about the defendant's case to the prisoners, and one of them (Deyerly) asked some of the prisoners where Lewis Moore, Burris' partner, was; and some one said that Moore had been convicted and sent to the penitentiary for ten years; and Hutton, another prisoner, spoke up and said that Moore was not in the penitentiary; that he had been sentenced, but had not yet gone. And the prisoner who volunteered the information that Moore was in the penitentiary then said he thought Moore had gone through Waco, on his way to the penitentiary. That said Deyerly discussed defendant's case with

one C. A. Smith, stating that they were going to let the defendant down as light as possible. Defendant also swears that this separation and conduct of the jury was in violation of the instructions of the court." These matters are set out in the motion for a new trial. There were no controverting affidavits, and so far as the record discloses, there was no evidence introduced in regard to these matters further than shown by the motion for a new trial and affidavit as stated above. The facts, as stated, show a separation of the jury; ten being on the inside of the jail, with the outside door locked, and the other two being in the jail office. This separation continued, as stated by the affiant, Hutton, "about thirty minutes." What these two jurors did, or what their surroundings were, is not stated, or attempted to be stated, or shown. The other ten jurors were shown to be in the jail, talking with the prisoners, and one of the jurors was discussing the appellant's cause with Hutton, and the then legal status of appellant's codefendant, Moore, in the robbery. The rule with regard to this matter is thus stated in Boyett v. State, 26 Tex. Crim. App., 689: "The rule upon this subject is that where there is a separation by permission of the court, to which the defendant excepts, the judgment will be reversed, without reference to injury or non-injury to the defendant; but in cases like the one in hand, and where the jury separated without permission of the court, to reverse, it must appear that the juror conversed with others about the case, or was guilty of misconduct to the prejudice of the accused." The uncontradicted and uncontroverted facts show a separation of the jury. At least, those two jurors who were outside of the jail and in the jail office are not shown to have been accompanied by an officer. They were separated from the other ten by the jail walls and the locked door. What was done by them or whom they saw, or with whom they conversed, or what was done during the half hour the other ten were in the jail talking with the prisoners, is not disclosed, or attempted to be shown. Nor is it controverted that the juror, Deyerly, discussed the different phases of this case with the prisoner, Hutton, and that he also had a conversation with reference to the then condition of Moore, defendant's codefendant, and his attitude as a convict for the very offense of which defendant was then being tried by this jury. If these matters were not true, or could have been explained by the State, it should have been done. Such conduct as this on the part of jurors, in the face of our statute, is, to say the least of it, reprehensible, and should be met by the exercise of the power of the trial court in some appropriate disciplinary manner. Such conduct is not conducive to a fair trial by an impartial jury, as guarantied by the Constitution and the laws of this State. We do not feel authorized to permit judgments of conviction to stand, when obtained under the circumstances set forth in the affidavits attached to the motion for a new trial. Appellant reserved a bill of exceptions to the action of the court with reference to one Kendrick, who was offered as a juror and accepted by both parties, and, after being sworn, was excused by the court. The

bill of exceptions reserved to this action of the court is so indefinite and uncertain and contradictory in its statements that we are unable to form any accurate or intelligible idea as to the facts attending this action of the court, and therefore do not here express any opinion in regard to it. If, as contended by appellant, he was placed in jeopardy, and when the juror was excused by the court he was entitled to his discharge, these matters can be shown upon another trial, under proper plea. If, in fact, appellant was placed in jeopardy, the facts may be shown upon another trial; but, as presented to us by the record, we do not feel able to intelligently decide this matter. Because of the separation and action of the jury detailed above, the judgment is reversed and the cause remanded.

*Reversed and Remanded.*

[NOTE.—A motion by the Assistant Attorney-General in behalf of the State for a rehearing was overruled without a written opinion.— Reporter.]